# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-KA-01663-SCT

*STEVEN ALLEN SANDERS a/k/a STEVE ALLEN SANDERS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/31/1999 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS M. FORTNER |
| | ROBERT M. RYAN |
| | ROBERT SHULER SMITH |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/01/2001 |
| MOTION FOR REHEARING FILED: | 2/27/2001; denied 4/12/2001 |
| MANDATE ISSUED: | 4/19/2001 |

### BEFORE PITTMAN, C.J., SMITH AND MILLS, JJ.

### MILLS, JUSTICE, FOR THE COURT:

¶1. Steven Allen Sanders was convicted of murder in the Circuit Court of Hinds County and sentenced to life imprisonment, from which he appeals. Finding no reversible error, we affirm his conviction and sentence.

### FACTS AND PROCEEDINGS BELOW

¶2. In 1981, fifteen-year-old Steven Allen Sanders ran away from home and moved in with a much older man named Marvin Watts with whom he became involved in a homosexual relationship. After several months, the romance waned, Sanders moved out, repented his homosexuality, and began a heterosexual life which he still maintains.

¶3. Sanders had no further contact with Watts until 1998 when Sanders moved in with Watts again. Sanders testified that he and Watts agreed to room together in order to cut down on living expenses and save money. However, within the first week Watts began making sexual advances toward Sanders who rebuffed his former lover, telling him that he had made a mistake when he was fifteen, that he was no longer interested in homosexual activity, and that he had moved in with Watts in order to save money. Despite the rejection, Watts continued to make sexual advances which Sanders refused.

¶4. After a few days of being rejected, Watts told Sanders to get out of his apartment if he was not going to have sex with him. This argument ended in a physical altercation between the two men. Sanders moved out

of the apartment on a Friday morning and did not return until Sunday morning when he went to retrieve his clothing. Watts told Sanders that he was about to leave for church, but to come back around 2:30 p.m. so they could talk. Sanders left and went to his brother's house to drink alcohol.

¶5. Around 3:30 p.m. Sanders returned to Watts's apartment. The two men argued about their sexual relationship and about Sanders moving out. Watts grabbed Sanders by the arm, and they began to "tussle." Sanders freed himself and went into the kitchen where he poured a glass of water as they continued to argue. Sanders sat his glass down and saw a hammer next to the sink. He grabbed it. The argument continued as Sanders walked back into the living room where Watts was sitting on the couch. Sanders testified that when he tried to pass Watts jumped up. Sanders hit Watts once in the arm and once in the head with the hammer. It is not clear whether Watts was standing or sitting at the time he was struck in the head. Sanders then left the apartment and threw the hammer into some bushes.

¶6. After leaving the apartment, Sanders met up with some friends and started "getting high." An hour and a half later, Sanders returned to Watts' apartment and stole the VCR. Sanders stated that at this time, "Marvin was still sitting on the couch, and he was breathing." Sanders pawned the VCR for cocaine and then "got high" again. Sanders ran out of cocaine again so he went back to the apartment and stole Watts' television, which he pawned for more cocaine. Sanders stated that Watts was still sitting on the couch and "snoring" at this time. Watts' body was found the next day by two friends. Watts died from one penetrating blow to the head.

¶7. Sanders was indicted and tried for killing Watts while committing an act eminently dangerous to others and evincing a depraved heart. Sanders testified at trial and admitted killing Watts, but argued that it was in self-defense. The jury question was whether the case was a deliberate design murder, depraved heart murder, manslaughter, or self-defense. The jury returned a verdict of guilty of deliberate design murder and Sanders received a life sentence. Aggrieved, he appeals to this Court.

## DISCUSSION

I. WHETHER THE TRIAL COURT ERRED BY UNFAIRLY LIMITING SANDERS'S EFFORTS TO PRESENT A FULL AND COMPLETE DEFENSE TO THE CHARGES AGAINST HIM IN VIOLATION OF THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS.

¶8. Sanders argues that he was denied his fundamental right to a fair trial because the trial court did not allow him to present his full and complete theories of defense to the jury. Specifically, Sanders states that he was not allowed to fully disclose his past and present relationship with Watts to the jury. Sanders contends that the entire history of his relationship with Watts is material, relevant, and probative of the issues. He argues that this testimony goes directly to his then present state of mind at the time of the struggle and delivery of the fatal blow to the head. At trial Sanders testified as follows:

**DIRECT EXAMINATION BY MR. SMITH [Sanders's attorney]:**

Q Where did you meet Marvin Watts?

A. I met Marvin Watts when I was fifteen - when I was fifteen years old.

Q. Where did you meet him and how did you meet him?

A. I had ran away from home, and Marvin had offered me a place to stay, so I moved to Canton, I went to Canton, Mississippi with him.

Q. Did you ever live with Marvin Watts?

A. Yes.

Q. And how old were you?

A. Fifteen.

Q. And he was much older then?

A. Yes.

Q. And could you tell us a little bit or tell the jury a little bit about what happened when you lived with him.

BY MR. DAVIDSON [for the State]: Your Honor, if it please the Court, I'm going to object to the relevance of this and what happened during this period of time. They made a statement that it is an issue of self-defense. This has nothing to do with the issue of self-defense. They can go into the relationship as it pertained to this particular circumstance, but going back sixteen years ago has no relevance whatsoever whether or not this defendant was entitled to use self-defense.

BY MR. SMITH: Your Honor, it does go to the issue of whether or not this defendant feared Marvin Watts and the fact that he did force him to have sex with him before.

BY MR. DAVIDSON: It's not relevant to the issue.

BY MR. SMITH: It is relevant, Your Honor. He's forced the guy to have sex with him. It's relevant.

BY THE COURT: I'll let you briefly ask him but let's move on after this because there is a question about -

BY MR. SMITH (Continuing)

Q. Did you have a sexual relationship with Marvin Watts at that time?

A. Yes.

Q. And what kind of sexual relationship?

A. Uh, uh -

Q. - Just take your time. It's okay.

A. Marvin asked me - first time I had sex with Marvin, Marvin had oral sex on me and -

BY MR. DAVIDSON: - Judge, I'm going to renew my objection. This is not relevant towards the issue of self-defense.

BY MR. SMITH: Your Honor, it is relevant. Goes to fear.

BY MR. DAVIDSON: Fear sixteen years previous?

BY THE COURT: What time frame are we talking about here?

BY MR. SMITH: Your Honor, sixteen years ago, but I mean this is relevant to whether or not he had forced him before.

¶9. The State argues that the nature and extent of the relationship between Sanders and Watts sixteen years ago is too far removed to be relevant. Further, the State argues that Sanders was able to get before the jury the fact that he had been involved in a homosexual relationship with Watts sixteen years earlier, but did not wish to continue that type of relationship. The State contends that this evidence was brought out in the testimony of the State's witnesses, the statements and testimony of Sanders, and in arguments to the jury.

¶10. Sanders failed to proffer the facts to which he would testify had the objection not been sustained. "In the absence of such a showing, this Court is helpless to determine whether or not the witness's testimony would be material." *Priest v. State*, 275 So.2d 79, 82 (Miss. 1973). This Court has stated the following rule with reference to proffers:

> [T]he rule is that 'when a party would seek a reversal because of excluded testimony, he must either place the witness on the stand, ask the questions, and have the answers made of record, or else the witness must be presented, and there must be a specific statement of what the answers or testimony of the witness would be, if allowed, so that the court may see from the record itself whether the offered evidence would be material and of benefit to the merits of the case and whether its exclusion was actually harmful and prejudicial to the offerer.'

*White v. State*, 507 So.2d 98, 101-02 (Miss. 1987)(citations omitted). In the case before us there is no showing of any attempt by defense counsel to preserve properly the testimony of Sanders. Therefore, we find no error.

> II. WHETHER THE TRIAL COURT ERRED IN GRANTING JURY INSTRUCTIONS S-1 AND S-2 AND REFUSING JURY INSTRUCTION D-5.

¶11. Sanders charges error in the granting of instructions S-1 and S-2. Specifically, Sanders argues that he was charged with depraved heart murder pursuant to Miss. Code Ann. § 97-3-19(1)(b) and that the proof at trial should have been limited solely to evidence relating to that single classification of murder. Sanders argues that a deliberate design murder instruction should not have also been given. Instructions S-1 and S-2 told the jury it could find Sanders guilty of murder if he killed Watts "with the deliberate design to effect the death of Marvin Watts . . . " or if he killed Watts while "engaged in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, by then and there striking the said Marvin Watts in the head with a hammer . . . ."

¶12. These two versions of murder track Miss. Code Ann. § 97-3-19, which provides in pertinent part:

> (1) The killing of a human being without the authority of law by any means or in any manner shall be murder in the following cases:

(a) When done with deliberate design to effect the death of the person killed, or of any human being;

(b) When done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual.

¶13. We addressed this issue in *Mallett v. State*, 606 So.2d 1092, 1094 (Miss.1992), which provides:

> There is no question that the structure of the statute suggests two different kinds of murder: deliberate design/premeditated murder and depraved heart murder. The structure of the statute suggests these are mutually exclusive categories of murder. Experience belies the point. As a matter of common sense, every murder done with deliberate design to effect the death of another human being is by definition done in the commission of an act imminently dangerous to others and evincing a depraved heart, regardless of human life. Our cases have for all practical purposes coalesced the two to the Section 97-3-19(1)(b) subsumes (1)(a).

We held that it was not error to grant both instructions. This view was reasserted in *Hurns v. State*, 616 So.2d 313, 321 (Miss. 1993) and *Catchings v. State*, 684 So.2d 591 (Miss. 1996). Our holdings in these cases are dispositive of this issue. This assignment of error is without merit.

¶14. Sanders also argues that the circuit court erred in refusing to give a jury instruction on culpable negligence manslaughter. He contends that the facts in the record support such an instruction. The State responds that the record shows no evidence of a negligently committed act and that no such claim was made at trial by Sanders.

¶15. The jury was instructed on deliberate design murder, depraved heart murder, heat of passion manslaughter, and self-defense. Sanders's proposed jury instruction on culpable negligence manslaughter, however was refused. After hearing arguments on this instruction, the trial judge stated:

> The Court having heard all the evidence is of the opinion that there is absolutely no evidence here of a negligent act on the part of the defendant. All the testimony was that he intentionally hit him in the head with a hammer, and so the evidence does not support the instruction, which is required of any instruction on the substance of a case and substance of the theory.

> The Court believes that the jury would be permitted to speculate and guess, which is not permitted by law, if this instruction were given, and the Court is further of the opinion that it would be misleading to the jury, and, therefore, based on the applicable law and the evidence the Court is refusing D-5.

¶16. "Lesser included offense instructions should be given if there is an evidentiary basis in the record that would permit a jury rationally to find the defendant guilty of the lesser offense and to acquit him of the greater offense." *Welch v. State*, 566 So.2d 680, 684 (Miss. 1990). In reviewing the propriety of such an instruction, we have stated:

> A lesser-included offense instruction should be granted unless the trial judge and ultimately this Court can say, taking the evidence in the light most favorable to the accused and considering all the reasonable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser-included offense (conversely, not guilty of at least one element of the principal charge).

*McGowan v. State*, 541 So.2d 1027, 1028 (Miss. 1989). However, this Court has repeatedly held that a lesser-included offense instruction should not be indiscriminately granted, but rather should be submitted to the jury only where there is an evidentiary basis in the record. *Lee v. State*, 469 So.2d 1225, 1230 (Miss. 1985).

¶17. Culpable negligence is defined as "negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life." *Clark v. State*, 693 So.2d 927, 932 (Miss. 1997). Sanders's own testimony, however, reveals more than a wanton disregard of or indifference to Watts's safety and well-being. Sanders intentionally hit Watts once in the arm and once in the head with a hammer with sufficient force to crush his skull. He then left the apartment and returned twice the same day to steal Watts's televison and VCR. Sanders did not attempt to get help for Watts at the time the crime was committed nor when he returned while Watts was still alive. Instead, he allowed Watts to sit on the couch and bleed and vomit until dead. Viewing the evidence and all reasonable inferences therefrom, in a light most favorable to Sanders, a reasonable jury could not have found him guilty of mere culpable negligence. Accordingly, we find no error.

### III. WHETHER THE TRIAL COURT ERRED IN DENYING JURY INSTRUCTION D-7.

¶18. Sanders argues that the trial court erred in denying his definition of "heat of passion." He argues that the denial of the instruction contributed to the "confusing and misleading nature of the jury charges as a whole." Sanders contends that the jury instructions taken as a whole were confusing and led to a verdict not based on the evidence.

¶19. The jury was instructed on deliberate design murder, depraved heart murder, heat of passion manslaughter, and self-dense. However, the jury was obviously confused as evidenced by its request for further instructions on those terms. Specifically, the jury asked the court for the legal definition of "malice," "depraved heart," and "being engaged in the commission of an act eminently dangerous to others." The court declined to give further instructions.

¶20. When reviewing challenges to jury instructions, whether given or refused by the trial court, we apply the following standard:

> Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case, however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.

*Heidel v. State*, 587 So.2d 835, 842 (Miss. 1991).

¶21. The State argues that the proffered instruction was an incomplete and inaccurate statement of the law and, therefore, was properly refused. Sanders argues that the instruction contained the definition of heat of passion as set out by this Court in *Underwood v. State*. We defined heat of passion as:

> In criminal law, a state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade or murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger,

rage, hatred, furious resentment or terror.

*Underwood v. State*, 708 So.2d 18, 36 (Miss. 1998). However, Sanders's proffered jury instruction defining heat of passion did not include the language "passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time." An incorrect statement of the law is properly refused. *Watts v. State*, 733 So.2d 214, 237 (Miss. 1999). For the foregoing reason, we affirm the trial court on this issue.

## CONCLUSION

¶22. Finding no reversible error, we affirm the judgment of the Hinds County Circuit Court convicting Steven Allen Sanders of murder and sentencing him to life imprisonment.

¶23. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PITTMAN, C.J., McRAE, P.J., SMITH, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR. BANKS, P.J., NOT PARTICIPATING.**