989 So.2d 938 (2008)
Bradford STATEN, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-01612-COA.
Court of Appeals of Mississippi.
January 29, 2008.
Rehearing Denied May 20, 2008.
Certiorari Denied August 14, 2008.
*941 James T. McCafferty, Jackson, attorney for appellant.
Office of the Attorney General by Ladonna C. Holland, attorney for appellee.
Before KING, C.J., CHANDLER and CARLTON, JJ.
CHANDLER, J., for the Court.
¶ 1. Bradford Staten was convicted of the murder of his wife, Angela Staten. The Circuit Court of Grenada County sentenced him to life in the custody of the Mississippi Department of Corrections. Staten appeals, raising ten issues. We find no error and affirm Staten's conviction and sentence.

FACTS
¶ 2. The Statens lived with their three-month-old twins in a duplex in Holcomb, Mississippi. On the evening of May 28, 2006, Staten called 911 and reported that Angela was unconscious after having fallen and struck her head on a door. Staten reported that Angela said she was dizzy just before she fell. The dispatcher sent an ambulance and instructed Staten on how to assist Angela. The dispatcher provided detailed instruction to Staten, who expressed unfamiliarity with how to check for a pulse or perform cardiopulmonary resuscitation (CPR).
¶ 3. An emergency medical technician, Jason Scott Alexander arrived at the scene and located Angela lying on the bedroom floor near a large pool of water and blood. Angela had been severely beaten and her *942 partially clothed body was covered with bruises, abrasions, and lacerations that were inconsistent with her simply having fallen as reported by Staten. A heart monitor showed that Angela was clinically dead. Alexander testified that Staten was shirtless and frantic when he arrived. Alexander did not see any injuries on Staten.
¶ 4. Angela was transported to Grenada Lake Medical Center, where she briefly regained a pulse before she died. Deputy Adam Eubanks with the Grenada County Sheriff's Department spoke with Staten at the hospital. At that point, Staten was not under arrest. Staten told Deputy Eubanks that he and Angela had been alone with the children in the house the entire day. They were watching television when Angela said she had a headache. He told her to go lie down on the bed, and she got up to do so. Then, he heard something and saw her fall and hit her head on the bedroom door. He checked on her and called 911. Staten told Deputy Eubanks that, when the 911 operator told him to check for a pulse and breathing, he did not know how and was unsure what the 911 operator was talking about. Staten was later arrested. Police recovered two cards from his wallet indicating that in 2002 he was certified in adult CPR and in standard first aid.
¶ 5. Pathologist Dr. Stephen Hayne performed an autopsy which revealed that Angela died from a combination of a closed head injury and extensive hemorrhage of the neck indicative of manual strangulation. Dr. Hayne observed and photographed extensive injuries, inflicted at or about the time of death, to the surfaces of Angela's body that included skin gouges, bruising, and abrasions. There were injuries to her hips, thighs, legs, buttocks, arms, face, and head. Moreover, the body exhibited numerous injuries about three-quarter inches in size that had a pattern of an inner circle and an outer circle. Dr. Hayne testified that these injuries were inflicted with an object having that same pattern.
¶ 6. Investigators photographed blood stains and spatters in the entry, living room, dining area, bathroom, and bedroom of the house. Blood samples from these areas were taken and matched to Angela's blood. Investigators recovered a blood-stained T-shirt from underneath a bed, a broken piece of a crutch from under a newspaper in a baby stroller, and a rubber crutch stopper from tangled bed sheets. Both the piece of crutch and the rubber stopper had blood stains on them. No other remains of the crutch were located. Investigators also found a whole crutch. The Mississippi Crime Laboratory determined the piece of crutch was identical to a portion of the whole crutch. The crime lab also determined that the circular injuries on Angela's body matched a circular pattern found on the whole crutch.
¶ 7. Grant Dale Graham, Sr., an expert in blood stain pattern analysis with the Mississippi Bureau of Investigation, performed a blood stain pattern analysis on the evidence in the case. Graham testified that blood smears on the bathroom wall and bedroom door were contact patterns where a bleeding person had come into contact with the wall. The walls also exhibited blood spatter patterns consistent with blunt force trauma. Graham testified that the blood stains on the T-shirt were consistent with the wearer wielding a bloodied weapon and blood being cast off the weapon during the backswing. The stains inside the piece of crutch were consistent with the piece being used as a weapon. There were also drops of blood in several locations indicating Angela bled onto the floor. Graham stated that the totality of the blood stain patterns was inconsistent with Angela just having fallen *943 to the floor and not having moved around within the scene.
¶ 8. Staten put on no evidence in his defense. The jury found him guilty of Angela's murder.

LAW AND ANALYSIS

I. WHETHER THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE VERDICT.
¶ 9. Staten's first issue is that the verdict was against the overwhelming weight of the evidence. However, the entirety of his argument addresses the sufficiency of the evidence. For that reason, we limit our discussion to the sufficiency of the evidence, which Staten unsuccessfully challenged in the court below with his motion for a JNOV. On review of the denial of a JNOV, the "the critical inquiry is whether the evidence shows `beyond a reasonable doubt that accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.'" Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). We view the evidence in the light most favorable to the prosecution, and we will affirm if any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). However, if the evidence pertaining to an element of the offense points in favor of the defendant with sufficient force that reasonable persons could not have found guilt beyond a reasonable doubt, then this Court must reverse and render. Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)). Additionally, when the prosecution's case is entirely circumstantial, it must prove the defendant's guilt beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence. Billiot v. State, 454 So.2d 445, 461 (Miss.1984). It is the role of the jury to assess the weight and credibility of the evidence and to resolve any conflicts in the evidence. Latiker v. State, 918 So.2d 68, 73(¶ 12) (Miss.2005).
¶ 10. Staten contends that his guilt was not proven to the exclusion of all reasonable hypotheses consistent with innocence because he was the only person present when Angela received her fatal injuries, and he recounted that she fell and hit her head on the bedroom door. He challenges Dr. Hayne's conclusion that Angela died from a combination of a closed head injury and manual strangulation because Dr. Hayne testified that he did not observe petechiae in Angela's eyes, lungs or heart, which is a sign of manual strangulation. Staten avers that his version of events that Angela's fatal closed head injury was caused by her striking the door was supported by Dr. Hayne's testimony that the closed head injury could have been caused by falling and striking her head on a door and by the photographic evidence of a bloody smear on the bedroom door.
¶ 11. No evidence except Staten's own account of the incident supported his theory that Angela died as a result of striking her head on the door. The evidence cited by Staten does not assist his argument. Dr. Hayne did testify that Angela could have received the closed head injury by striking her head on the door, but he stated that the cause of death was a combination of a closed head injury and hemorrhaging from manual strangulation. The issue of whether the absence of petechiae undermined Dr. Hayne's conclusion as to the cause of death was a matter for the jury to weigh. Though there was a bloody smear on the door, Graham testified that this did not prove that Angela fatally *944 struck her head on the door because whatever part of her body touched the door at that time was already bleeding. A reasonable jury could have found from the physical evidence that Staten was lying about Angela having struck her head on the door and inferred from the circumstances to the exclusion of every reasonable hypothesis consistent with innocence that Staten caused death by inflicting the closed head injury and manually strangling Angela.
¶ 12. Moreover, "[a] mere fanciful or farfetched or unreasonable hypothesis of innocence is not sufficient to require an acquittal." Montgomery v. State, 515 So.2d 845, 848 (Miss.1987). Staten's account of how Angela died totally conflicted with the physical evidence. While Staten told the 911 dispatcher and Deputy Eubanks that Angela fell after feeling dizzy, the physical evidence indicated Angela was the victim of a violent attack which culminated in her death from manual strangulation and a closed head injury. Staten admitted he was the only adult at home with Angela that day. The evidence of the bloody T-shirt, the bloody piece of the crutch and stopper, and the numerous circular injuries on Angela's body from another piece of the crutch strongly suggested that Staten beat Angela severely with a crutch. The evidence shows that the crutch broke into pieces, and Staten disposed of the pieces, overlooking the two pieces found by police. A reasonable jury could have found beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence that Staten killed Angela.
¶ 13. The jury was instructed on deliberate design murder, depraved heart murder, and culpable negligence manslaughter. Staten contends that the State did not prove he acted with deliberate design or a depraved heart and the evidence was at best sufficient to support a culpable negligence manslaughter conviction. Culpable negligence manslaughter is provided for in Mississippi Code Annotated section 97-3-47 (Rev.2006), which states that "[e]very other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title shall be manslaughter." Culpable negligence has been defined as "negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life." Clayton v. State, 652 So.2d 720, 726 (Miss.1995).
¶ 14. Murder is defined by Mississippi Code Annotated section 97-3-19(1) (Rev.2006). Under that statute, to obtain a murder conviction, the State had to prove that Staten killed Angela with deliberate design to effect her death or killed her "in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual." The difference between culpable negligence manslaughter and depraved heart murder is the degree of mental state of culpability. Windham v. State, 602 So.2d 798, 801 (Miss.1992). "[D]epraved heart murder requires a higher degree of recklessness from which malice or deliberate design might be implied." Id.
¶ 15. A deliberate design to effect death is implied when a death occurs "as a result of some willful act by the accused under circumstances where he knows the act is likely to cause death or serious bodily injury." Walker v. State, 671 So.2d 581, 598 (Miss.1995) (quoting Berry v. State, 575 So.2d 1, 12 (Miss.1990)). The evidence, viewed in the light most favorable to the prosecution, was that Staten repeatedly beat and stabbed Angela with a crutch and strangled her. These were willful acts likely to cause death or serious *945 bodily injury and evinced a reckless indifference to the danger to human life from which malice may be inferred. Staten argues that, pursuant to Tait v. State, 669 So.2d 85 (Miss.1996), the fact that he called 911 and pleaded for help in saving Angela was inconsistent with his acting with a depraved heart, regardless of human life. Tait was convicted of depraved heart murder for the shooting of a friend when the two were horseplaying with a gun. Id. at 89. The supreme court found that Tait's conduct of falling to the ground and crying after the shooting was consistent with an accident and reversed and remanded for sentencing on culpable negligence manslaughter. Id. at 90. This case is distinguishable from Tait because the physical evidence was inconsistent with Angela's death having been accidental. Moreover, though Staten called 911, his expressions of unfamiliarity with the basics of CPR while possessing certification in CPR and first aid training were inconsistent with his innocence of murder. The evidence was sufficient to enable a reasonable jury to find beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence that Staten murdered Angela. This issue is without merit.

II. WHETHER THE TRIAL COURT ERRED IN DENYING STATEN'S MOTION FOR A PSYCHIATRIC EVALUATION.
¶ 16. Staten argues that the trial court erred by denying his motion for a mental evaluation to determine his competence to stand trial. The standard for assessing competence to stand trial is "whether the defendant has `sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and `has a rational as well as factual understanding of the proceedings against him.'" Martin v. State, 871 So.2d 693, 698(¶ 17) (Miss.2004) (quoting Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)). A defendant who is competent to stand trial is one:
(1) who is able to perceive and understand the nature of the proceedings; (2) who is able to rationally communicate with his attorney about the case; (3) who is able to recall relevant facts; (4) who is able to testify in his own defense if appropriate; and (5) whose ability to satisfy the foregoing criteria is commensurate with the severity and complexity of the case.
Howard v. State, 701 So.2d 274, 280(¶ 18) (Miss.1997). According to Rule 9.06 of the Uniform Rules of Circuit and County Court Practice, the trial court on its own motion or upon motion of an attorney shall order a mental evaluation if, before or during the trial, the trial court possesses reasonable ground to believe the defendant is incompetent to stand trial. After the examination, the trial court must conduct a competency hearing after which the court must weigh the evidence and render a determination of whether the defendant is competent to stand trial. URCCC 9.06.
¶ 17. In this case, the trial court held a hearing on Staten's motion for a mental evaluation to determine whether reasonable ground existed to believe Staten was incompetent to stand trial. An affirmative finding would have triggered the need for a mental evaluation followed by a competency hearing. After hearing evidence from defense counsel, Staten's mother, his former co-workers, Alexander, Deputy Eubanks, and a corrections officer, as well as reviewing an affidavit from defense co-counsel, the trial court ruled that insufficient evidence had been presented to establish reasonable ground for the court to believe Staten was incompetent to stand trial or to assist in his defense.
*946 ¶ 18. To warrant a mental evaluation, the trial court must find from the evidence that there is a probability, not a mere possibility, that the defendant is incapable of making a rational defense. Richardson v. State, 767 So.2d 195, 203(¶ 41) (Miss.2000). We will affirm the trial court's finding that the evidence does not show a probability that the defendant is capable of making a rational defense unless the decision is against the overwhelming weight of the evidence. Id. Here, Staten's mother, Ada Staten, testified that Staten had no history of mental illness, had a master's degree, and had been a counselor at a mental health center. Ada related that, after Staten's arrest, he became depressed, withdrawn, could not communicate, and was unable to recall names and telephone numbers. Though Ada stated that Staten had improved in the last two weeks, she opined that he was unable to assist in his own defense. Defense counsel testified that Staten was unhelpful, was unresponsive to questions about what happened the night of the killing, and was unfocused on what the attorney needed him to focus on for adequate representation. Staten's former human resources manager testified that his file showed no history of mental illness, and a co-worker testified that Staten had never exhibited any mental problems. Deputy Eubanks testified that, while Staten was upset on the night of the crime, he was able to understand and answer questions normally. Sylvia Whitley, a corrections officer, testified, from her observations at the jail, Staten was communicative and did not exhibit any signs of mental problems.
¶ 19. In making its ruling, the trial court reviewed this testimony and the affidavit of Staten's other defense attorney stating his belief that Staten did not understand the charges. The affidavit further stated that Staten was not able to assist in his defense and was incompetent to stand trial. The trial court found this affidavit to be entitled to little weight because it expressed conclusory opinions without any supporting factual information. Observing that Staten lacked any history of mental illness or erratic behavior, the trial court found that the evidence showed that Staten was traumatized by the events and uncommunicative. The trial court further found that Staten exhibited reluctance, rather than inability, to assist in his own defense. Therefore, the trial court found no reasonable ground to order a mental evaluation. We cannot say that this decision was against the overwhelming weight of the evidence. This issue is without merit.

III. WHETHER THE PHOTOGRAPHIC EVIDENCE WAS CUMULATIVE, INFLAMMATORY, AND UNNECESSARY.
¶ 20. Numerous photographs were admitted into evidence. Most of these photographs were of the crime scene. Thirteen autopsy photographs were admitted that showed the injuries to the surfaces of Angela's body. Staten argues that a certain photographs were cumulative of each other, including Exhibits 16, 19, 21, 22, 23, 26, 28, 52, 53, 54, 76 and 82. Staten further argues that the admission of so many photographs served to inflame the jury against him; thus, the prejudicial effect of the photographs outweighed their probative value.
¶ 21. Mississippi Rule of Evidence 103(a)(1) provides that, unless a timely objection was made, error may not be predicated on a ruling admitting evidence. Staten failed to object to the admission of Exhibits 16 and 82 and Exhibits 19, 21, 22, 23, 26, 28, 52, 53, and 54 were admitted upon the advance agreement of the prosecution and defense counsel. Therefore, *947 Staten's arguments regarding these photographs are procedurally barred. M.R.E. 103(a)(1); Smith v. State, 925 So.2d 825, 835(¶ 26) (Miss.2006).
¶ 22. Staten did object to the admission of several autopsy photographs offered by the State, including Exhibit 76, on the ground that the photographs were cumulative. The trial court excluded several of the photographs as being cumulative or irrelevant. The trial court admitted the other photographs upon a finding that their probative value outweighed their prejudicial effect because they showed the extent of the injuries, which was probative of the issue of whether a murder had been committed.
¶ 23. On appeal, Staten challenges the admission of Exhibit 76 as being cumulative of Exhibit 82. Exhibit 82 was a closeup of Angela's face, and Exhibit 76 showed Angela's right arm with her upper body and face in the background. Staten argues that the admission of two photographs which showed Angela's facial injuries was cumulative and prejudicial. We review the trial court's admission of photographic evidence for abuse of discretion. Jones v. State, 920 So.2d 465, 476(¶ 35) (Miss.2006). The discretion of the trial court "runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value." Williams v. State, 544 So.2d 782, 785 (Miss.1987). Photographs are admissible when they serve some legitimate, evidentiary purpose despite the fact that the photographs might arouse the jurors' emotions. Spann v. State, 771 So.2d 883, 895(¶ 31) (Miss. 2000). Photographs have evidentiary value if they "(1) `aid in describing the circumstances of the killing; (2) describe the location of the body and cause of death; (3) supplement or clarify witness testimony.'" Id. (quoting Westbrook v. State, 658 So.2d 847, 849 (Miss.1995)).
¶ 24. We find no abuse of discretion in the admission of Exhibit 76. The exhibit was not wholly cumulative of Exhibit 82. While Angela's facial injuries were visible in both photographs, Angela's right arm was prominent in Exhibit 76, and Dr. Hayne used Exhibit 76 to describe the pattern injuries on the back of Angela's right arm. Therefore, the photograph aided the jury in ascertaining the circumstances of Angela's death and supplemented Dr. Hayne's testimony. The trial court was within its discretion in finding that the probative value of Exhibit 76 outweighed its potential for prejudice. This issue is without merit.

IV. WHETHER THE TRIAL COURT ERRED IN GRANTING JURY INSTRUCTIONS S-2 AND S-4.
¶ 25. Staten argues that the trial court erred by granting two of the State's jury instructions, S-2 and S-4. In order to preserve error predicated upon the granting of a jury instruction, a defendant must make a contemporaneous and specific objection to permit the trial court to consider the issue. Parks v. State, 884 So.2d 738, 746(¶ 26) (Miss.2004). Our standard of review of the grant or denial of jury instructions is that we will read the instructions as a whole with no single instruction taken out of context. Chandler v. State, 946 So.2d 355, 360(¶ 21) (Miss. 2006). A defendant is entitled to jury instructions that present his theory of the case; however, this entitlement is limited in that the trial court may refuse an instruction that incorrectly states the law, is covered fairly elsewhere in the instructions, or lacks foundation in the evidence. Parks, 884 So.2d at 746(¶ 26).
¶ 26. Instruction S-2 instructed the jury that if it found the State failed to *948 prove each element of murder beyond a reasonable doubt, then it should proceed to deliberate on whether the State had proven the lesser crime of culpable negligence manslaughter. The jury instruction then provided the elements of culpable negligence manslaughter and stated that if the jury found the State had not proved each of those elements beyond a reasonable doubt, then it must find Staten not guilty. Instruction S-4 stated:
The court instructs the jury that only if the State has failed to prove all the elements of murder, should you consider a lesser offense; however, if the evidence warrants it, you may find the defendant guilty of a crime less than murder. Notwithstanding this right, it is your duty to accept the law as given to you by the court, and if the facts and the law warrant a conviction of the crime of murder, then it is your duty to make such finding uninfluenced by your power to find a lesser offense. This provision is not designed to relieve you from the performance of an unpleasant duty. It is included to prevent a failure of justice if the evidence fails to prove the original charge but does justify a verdict for the lesser crime of manslaughter.
¶ 27. Staten objected to the grant of instructions S-2 and S-4, raising several arguments on appeal challenging the grant of the instructions. Staten complains that the word "element" used in instruction S-2 was a legal term confusing to a lay juror. This argument is procedurally barred because Staten did not specifically object at trial on this ground. Staten's other arguments were addressed in his objection. Staten contended that the references in both instructions to manslaughter as a lesser offense could have led the jury to believe manslaughter was not a very serious crime and that a manslaughter conviction would constitute a mere slap on the wrist. He also contended the word "lesser" improperly commented on the evidence. Staten further complained that the "unpleasant duty" language in instruction S-4 was impermissibly argumentative.
¶ 28. In Chandler, the supreme court reviewed an imperfect self-defense manslaughter instruction that was given as a lesser-included offense instruction. Chandler, 946 So.2d at 362(¶ 29). The supreme court found that the instruction adequately instructed the jury. Id. The imperfect self-defense instruction stated that, if the jury failed to find all the elements of murder, then it could consider the lesser charge of manslaughter. Id. The instruction further provided that this provision was not designed to relieve the jury of the performance of an unpleasant duty. Id. Further, the "unpleasant duty" language was approved in Walker, 671 So.2d at 607-08. Because the language that Staten complains of has been approved by the supreme court, this issue is without merit.
¶ 29. Staten also complains of certain language in instruction S-2. The pertinent language provided:
The court instructs the jury that the killing of a human being without deliberate design or without a depraved heart regardless of human life is manslaughter. The court instructs the jury in this case that if you believe from the evidence in this case beyond a reasonable doubt and to the exclusion of every reasonable hypothesis consistent with innocence that the defendant, Bradford Staten, did cause the death of Angela Fleming Staten without deliberate design, or without a depraved heart regardless of human life by such culpably negligent conduct that exhibited or manifested a wanton or reckless disregard for the safety of human life, or such an indifference to the consequence of his *949 acts under the surrounding circumstances as to render his conduct tantamount to wilfulness in causing the death of Angela Fleming Staten, then you shall find the defendant guilty of Manslaughter by culpable negligence.
Staten does not contend that the language was an incorrect statement of the law, but only that it was confusing because it juxtaposed the elements of depraved heart murder with the similar elements of manslaughter. He cites Sudduth v. State, 562 So.2d 67, 72 (Miss.1990) for the general proposition that inaccurate and confusing instructions can constitute reversible error. We find no error in the granting of instruction S-2. The trial court granted this instruction in addition to instructions defining deliberate design murder, depraved heart murder, and culpable negligence manslaughter. Instruction S-2 accurately informed the jury how it was to structure its deliberations on the question of Staten's guilt or innocence of these crimes. This issue is without merit.

V. WHETHER THE TRIAL COURT ERRED IN DENYING STATEN'S PROFFERED JURY INSTRUCTIONS.
¶ 30. Staten contends that the trial court erroneously refused eleven of his proffered jury instructions.

A. Heat of passion manslaughter instructions
¶ 31. Staten argues that the evidence supported his proffered heat of passion manslaughter instructions such that their refusal was error. He cites Manuel v. State, 667 So.2d 590, 593 (Miss.1995), which held that a defendant is entitled to a jury instruction expressing his theory of the case no matter how meager or unlikely the evidence is in support of the defense theory. Nonetheless, a lesser-included-offense instruction should be given only when there is an evidentiary basis for the instruction in the record that would permit the jury to rationally acquit the defendant of the greater offense and convict him of the lesser. Chandler, 946 So.2d at 360(¶ 21). Staten argues that a scintilla of evidence supported a heat of passion manslaughter instruction because Dr. Hayne testified that Angela's injuries were of the type associated with passion, and because the police recovered a pair of size five women's panties from Staten's pocket, a size too small to have been worn by Angela. Staten theorizes that the panties might have sparked an angry altercation between Angela and Staten during which he killed her.
¶ 32. Heat of passion manslaughter is "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense...." Miss. Code Ann. § 97-3-35 (Rev.2006). It is:
[a] state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.
Phillips v. State, 794 So.2d 1034, 1037(¶ 9) (Miss.2001). Though Dr. Hayne testified that Angela's injuries were consistent with passion, there was absolutely no evidence supporting the theory that Staten's passion was the result of reasonable provocation. The evidence of the panties in Staten's pocket would have required far too much speculation on behalf of the jury to enable a finding of reasonable provocation. The trial court properly declined to instruct *950 the jury on heat of passion manslaughter.

B. Instruction D-7
¶ 33. Instruction D-7 stated that if the jury found that Staten made every reasonable attempt to resuscitate Angela and to obtain medical attention to prevent her death, then it could not find that Staten intended to kill her; and he could only be guilty of manslaughter. The trial court denied this instruction as an improper comment on the evidence and told Staten he could argue this theory to the jury in closing arguments. Staten contends the instruction properly stated the law and should have been given.
¶ 34. Staten's argument is without merit. Instruction D-7 improperly instructed the jury that any reasonable attempts by Staten to save Angela would negate the element of malice. In actuality, Staten's actions in calling 911 and attempting to resuscitate Angela were matters for the jury to weigh in reaching a determination as to his state of mind at the time of the deadly acts. The trial court properly refused instruction D-7.

C. Instructions D-10A and D-10B
¶ 35. Defense instructions D-10A and D-10B explained that reasonable doubt could arise from the evidence, from a lack of evidence, from a conflict in the evidence, from insufficiency of the evidence, from an application of the law to the evidence, or from the credibility of a material witness. The trial court refused these instructions because they were improper efforts to define reasonable doubt. Staten contends that the jury instructions were not efforts to define reasonable doubt, but attempts to inform the jury how to determine whether reasonable doubt existed. This Court condemned an almost identical instruction as an improper attempt to define reasonable doubt in Jones v. State, 912 So.2d 501, 506-07 (¶¶ 18-19) (Miss.Ct.App. 2005). The trial court properly refused instructions D-10A and D-10B.

D. Instructions D-13 and D-14
¶ 36. Staten proffered Instructions D-13 which described the state of mind required for depraved heart murder and D-14 which provided the state of mind for culpable negligence. Instruction D-13 stated that the phrase: "under circumstances manifesting an extreme indifference to the value of human life" signified "a wanton disregard of, or utter indifference to, the safety of human life, and this indifference shall be so clearly evidenced as to place it beyond all reasonable doubt. The act must be of such magnitude as to be the equivalent to criminal intent." Instruction D-14 stated that a disregard of the safety of human life is a necessary element of the crime of culpable negligence. The trial court denied these instructions because the elements of depraved heart murder and culpable negligence manslaughter were covered fairly by other jury instructions, including one submitted by Staten. Indeed, the record shows that the elements of depraved heart murder were provided by instruction S-1 and the elements of culpable negligence manslaughter were provided by instructions S-2 and D-11. The distinction between the two crimes was discussed in instruction S-2. This issue is without merit.

F. Other instructions
¶ 37. In a succinctly crafted assignment of error, Staten avers that the trial court improperly denied four other defense jury instructions. However, Staten cites no precedent and makes no analysis specifically supporting his proposition that these instructions should have been given. The appellant has the duty to support his assignments of error with arguments and citation to legal authority. Drennan v. State, 695 So.2d 581, 585 *951 (Miss.1997). In the absence of this support, this Court has no duty to consider Staten's assignment of error and we decline to do so. Id. at 586.

VI. WHETHER THE TRIAL COURT ERRED IN FAILING TO GIVE AN ACCIDENT INSTRUCTION.
¶ 38. Early in the trial, Staten indicated that he would proceed on a theory that Angela's death was an accident. The trial court agreed that Staten might be entitled to an accident instruction. However, Staten's trial strategy focused on convincing the jury that the crime was manslaughter, and he did not request an accident instruction. After the jury instructions were filed, the trial court made an on-the-record notation that Staten had failed to request an accident instruction. The trial court also made a finding that, had Staten requested an accident instruction, the court would have denied the instruction because it was unsupported by the evidence.
¶ 39. There was no error in the failure to give an accident instruction. No such instruction was requested by Staten. The trial court has no duty to suggest jury instructions or to instruct the jury sua sponte, and no reversible error will be predicated on the trial court's failure to give an instruction that was not requested. Booze v. State, 942 So.2d 272, 275(¶ 15) (Miss.2006). This issue is without merit.

VII. WHETHER THE TRIAL COURT ERRED BY FAILING TO GRANT A DIRECTED VERDICT AT THE CLOSE OF THE STATE'S CASE AS TO DELIBERATE DESIGN MURDER AND PERMITTED THE STATE TO PROCEED UNDER A THEORY OF DEPRAVED HEART MURDER.
¶ 40. At the close of the State's case, Staten moved for a directed verdict on the charge of deliberate design murder. The State argued that the evidence was sufficient to support a conviction of deliberate design murder or depraved heart murder. Staten complained that his indictment charged the elements of deliberate design murder only and that he was not placed on notice that the State would proceed under a depraved heart murder theory. The trial court denied the motion for a directed verdict and the jury was instructed on depraved heart murder.
¶ 41. Staten argues that the indictment which tracked the elements of deliberate design murder did not place him on notice of the depraved heart murder theory. This argument was rejected by the supreme court in Catchings v. State, 684 So.2d 591, 599 (Miss.1996). There the court held that no amendment to a deliberate design murder indictment was necessary in order to give a depraved heart murder instruction. Id. The supreme court stated:
There is no question that the structure of the statute suggests two different kinds of murder: deliberate design/premeditated murder and depraved heart murder. The structure of the statute suggests these are mutually exclusive categories of murder. Experience belies the point. As a matter of common sense, every murder done with deliberate design to effect the death of another human being is by definition done in the commission of an act imminently dangerous to others and evincing a depraved heart, regardless of human life. Our cases have for all practical purposes coalesced the two so that Section 97-3-19(1)(b) subsumes (1)(a).
Id. (quoting Mallett v. State, 606 So.2d 1092, 1095 (Miss.1992)). Catchings has been the law in this State for over ten *952 years, long before Staten was indicted. This argument is without merit.

VIII. WHETHER STATEN WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.
¶ 42. With new appellate counsel, Staten raises the issue of ineffective assistance of counsel for the first time on appeal. Staten argues that trial counsel was deficient for putting on insufficient evidence supporting the request for a mental evaluation, failing to pursue an interlocutory appeal of the denial of a mental evaluation, failing to object to the admission of evidence including the CPR and first aid certification cards and photographs, failing to impeach Deputy Eubanks with a prior inconsistent statement, asking Deputy Eubanks questions on cross-examination that emphasized that a violent altercation occurred in several different places within the house, failing to cross-examine the DNA analyst concerning her identification of Angela's blood, allowing a prosecution witness to give narrative testimony, and failing to request an accident instruction.
¶ 43. This Court applies the two-part test from Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) in reviewing claims of ineffective assistance of counsel. McQuarter v. State, 574 So.2d 685, 687 (Miss.1990). Under Strickland, the defendant bears the burden of proof that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. McQuarter, 574 So.2d at 687. This Court looks at the totality of the circumstances in determining whether counsel was effective. Id. There is a strong, but rebuttable, presumption that counsel's performance fell within the wide range of reasonable professional assistance. Id. The presumption may be rebutted with a showing that, but for counsel's deficient performance, a different result would have occurred. Leatherwood v. State, 473 So.2d 964, 968 (Miss. 1985).
¶ 44. The supreme court has recognized that certain claims are incapable of being raised at the trial level, including ineffective assistance of counsel. Wilcher v. State, 863 So.2d 719, 761 (¶ 162) (Miss. 2003). However, the case of Read v. State, 430 So.2d 832, 841 (Miss.1983) established that a convicted criminal may raise the issue of ineffective assistance of counsel on direct appeal. When the issue is raised, this Court's review is strictly limited to the appellate record. Id. We may determine the merits of the claim only when "(a) ... the record affirmatively shows ineffectiveness of constitutional dimensions, or (b) the parties stipulate that the record is adequate and the Court determines that findings of fact by the trial judge able to consider the demeanor of witnesses, etc. are not needed." Id. If these two conditions are unmet, we should review the other issues in the case. Id. But if the record does not support the ineffective assistance claim, we should deny relief, preserving the appellant's right to raise the issue in post-conviction proceedings. Wilcher, 863 So.2d at 761 (¶ 162).
¶ 45. We proceed to determine if the record in this case "affirmatively shows ineffectiveness of constitutional dimensions" such that the presiding judge had a duty "to declare a mistrial or order a new trial sua sponte." Colenburg v. State, 735 So.2d 1099, 1102(¶ 8) (Miss.Ct.App.1999). In other words, for this Court to determine the issue of ineffectiveness of counsel on Staten's direct appeal, the record must show that counsel's performance was so deficient that the trial court had a duty to declare a mistrial in order to prevent a mockery of justice. Id. (citing Parham v. State, 229 So.2d 582, 583 (Miss.1969)).
*953 ¶ 46. The record in this case, including the alleged deficiencies cited by Staten, does not affirmatively show ineffectiveness of constitutional dimensions. Rather, the record evinces that Staten was represented by two experienced defense attorneys. The decisions of which Staten complains fall within the presumption of trial strategy and reasonable professional assistance. We note that, regarding the accident instruction, Staten has not shown prejudice under Strickland because the trial court stated that the accident instruction would have been denied had one been requested. We dismiss Staten's claim of ineffective assistance of counsel without prejudice to his ability to raise the issue in post-conviction proceedings.

IX. WHETHER CUMULATIVE ERROR REQUIRES REVERSAL.
¶ 47. Staten argues that the cumulative effect of errors by the trial court denied him a fair trial. We have found that no errors occurred in this case. Where there is no error as to any part, there can be no reversible error as to the whole. McFee v. State, 511 So.2d 130, 136 (Miss.1987). This issue is without merit.

X. WHETHER THE SENTENCE OF LIFE WAS GROSSLY DISPROPORTIONATE, UNCONSTITUTIONAL, AND IMPROPER GIVEN THE EVIDENCE.
¶ 48. Finally, Staten asserts that life imprisonment without the possibility of parole is too harsh a penalty under the circumstances of this case. He argues that, "to the extent that the murder statute requires a life sentence without the possibility of parole, it is unconstitutional." Mississippi Code Annotated section 97-3-21 (Rev.2006) provides that the sentence for capital murder is life without the possibility of parole. The sentence for murder is imprisonment for life. Staten was convicted of murder and was sentenced to life imprisonment, not to life without the possibility of parole. Staten's argument is inapplicable to the sentence which he actually received. We note that Staten's parole eligibility is governed by the applicable parole statutes.
¶ 49. THE JUDGMENT OF THE CIRCUIT COURT OF GRENADA COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.