# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-01305-COA

**KIMBERLY RENEE LUTER A/K/A KIMBERLY LUTER**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

DATE OF JUDGMENT:          10/30/2023
TRIAL JUDGE:          HON. BRAD ASHLEY TOUCHSTONE
COURT FROM WHICH APPEALED:          MARION COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:          OFFICE OF STATE PUBLIC DEFENDER
          BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
          BY: SCOTT STUART
DISTRICT ATTORNEY:          HALDON J. KITTRELL
NATURE OF THE CASE:          CRIMINAL - FELONY
DISPOSITION:          AFFIRMED - 02/11/2025
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., McDONALD AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     In the Circuit Court of Marion County, Mississippi, Kimberly Renee Luter was convicted of manslaughter in violation of Mississippi Code Annotated section 97-3-47 (Rev. 2020). The circuit court sentenced Luter to twenty years in the custody of the Mississippi Department of Corrections, with five years suspended and fifteen years to serve, and five years of reporting post-release supervision. Aggrieved, Luter appealed.

## FACTS AND PROCEDURAL HISTORY

¶2.     On January 24, 2021, Luter arrived home after work at about 2 p.m. and was planning to go to town later. When she opened the door to her trailer to leave, two dogs ran into her

house and ran back out, pulling trash out with them.  Luter testified that she then got her rifle and fired one shot at one of the dogs along the tree line and then fired two more shots at a dog sitting on the steps to the rear door of Calvina Flowers' trailer.  The front door of Luter's trailer faced the back of Flowers' trailer.

¶3.     Flowers shared her trailer with her two daughters, Ralajah and Aniya.[1] At the time of the incident, Flowers and her daughters had arrived home after a trip to Prentiss to take something to a friend. When they arrived home, Ralajah went to a back room to do some homework while Flowers and Aniya stayed in the living room to watch a movie. When they heard shots, they ran to the back of the trailer and found that Ralajah had been shot.

¶4.     After finding Ralajah shot, Flowers exited the side of the trailer, screaming that someone had "shot her baby." Luter knew she was the only one who had fired a gun, so she dropped the gun and "ran around to the front to go check on the baby." According to Luter, Ralajah was lying on a mattress on the floor.  Luter and Aniya tried to determine where Ralajah was injured. Luter then went back outside to get her phone and called 911. About the same time, Flowers was contacting Ralajah's father. After Ralajah's father arrived, Flowers, Ralajah, and her father were escorted to the hospital, and Luter stayed on the phone waiting for the police.

¶5.     Brad Anderson, an investigator with the Marion County Sheriff's Department, was dispatched to the scene. When he arrived, he observed Luter sitting on the ground, appearing distraught. Luter told him she "did not mean to shoot the baby" and that she was shooting at

---

[1] At the time of the incident, Ralajah was ten years old, and Aniya was thirteen years old.

a dog. Anderson asked Luter where the firearm was, and she retrieved the weapon from her trailer and gave it to Anderson. Luter told Anderson she had fired the rifle the previous day at a dog near the wood line at the edge of the mobile home. All the shell casings recovered by Anderson were consistent with what Luter had told him. In total, Anderson collected five shell casings, two from the shots Luter fired the previous day and three from the day of the incident. None of the bullets hit the dogs.

¶6.     Anderson testified that Luter was charged and arrested that same evening. Ralajah died two days later, and the charges were upgraded to manslaughter, for which she was subsequently indicted. Forensic pathologist Staci Turner, who performed Ralajah's autopsy, removed one bullet from her leg and another from the left side of her brain. The bullet from Ralajah's brain, which had entered through Ralajah's ear and caused her death, matched Luter's firearm.

## STANDARD OF REVIEW

¶7.     On appeal, Luter challenges the sufficiency and weight of the evidence supporting her conviction and sentence. We explained our analyses of sufficiency and weight of the evidence in *Jones v. State*, 380 So. 3d 974, 980-81 (¶¶13-14) (Miss. Ct. App. 2024):

> We review a challenge to "the legal sufficiency of the evidence" de novo, but the evidence must be "viewed in a light most favorable to the State." *Johnson v. State*, 904 So. 2d 162, 166 (¶7) (Miss. 2005). This means that "all credible evidence supporting a defendant's guilt should be accepted as true, and all favorable inferences drawn from the evidence must be reconciled in the prosecution's favor." *Id.* "We determine if any rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Williams v. State*, 285 So. 3d 156, 159 (¶11) (Miss. 2019). "We are not required to decide—and in fact we must refrain from deciding—whether we think the State proved the elements." *Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss.

3

2010). Rather, we must affirm the conviction as long as there is sufficient evidence for a rational juror to find that the State proved all the elements of the offense. *Id*.

Different standards of review govern a challenge to the weight of the evidence. *Burden v. State*, 347 So. 3d 174, 176 (¶8) (Miss. 2022). A challenge to the weight of the evidence addresses the trial judge's denial of a motion for a new trial, which we review only for an abuse of discretion. *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017). Our standard of review is deferential because the "trial judge is in the best position to view the trial." *Id*. at 291 (¶18) (quoting *Amiker v. Drugs For Less Inc.*, 796 So. 2d 942, 947 (¶16) (Miss. 2000)). "The trial judge who hears the witnesses live, observes their demeanor and in general smells the smoke of the battle is by his very position far better equipped" to rule on a new trial motion. *Id*. at 291-92 (¶18) (quoting *Amiker*, 796 So. 2d at 947 (¶16)). When we review a challenge to the weight of the evidence, we also afford great deference to the jury's verdict. *Id*. at 289 (¶1). The jury is the fact-finder, and this Court will not "assume[ ] the role of juror on appeal." *Id*. As the Supreme Court made clear in *Little*,

> [w]e do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury. Our role as [an] appellate court is to view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.

*Id*.

## ANALYSIS

### I.     Sufficiency of the Evidence

¶8.     At the close of the State's case-in-chief, Luter's counsel moved for a directed verdict, contending that the State failed to prove all the elements of the crime of culpable negligence manslaughter and that the only result a reasonable juror could reach was that "this amounted to mere negligence or accidental shooting."[2] Luter argues on appeal that "the evidence

---

[2] Luter did not request an "accident and misfortune" jury instruction pursuant to

4

supports no inference that Luter acted wantonly in a manner that demonstrated a reckless indifference to the consequences of her actions." Luter was indicted and convicted pursuant to Mississippi Code Annotated section 97-3-47 (Rev. 2020), which provides that "[e]very other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law, not provided for in this title, shall be manslaughter." "Culpable negligence has been defined as 'negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life.'" *Staten v. State*, 989 So. 2d 938, 944 (¶13) (Miss. Ct. App. 2008) (citing *Clayton v. State*, 652 So. 2d 720, 726 (Miss. 1995)); *see also Gary v. State*, 11 So. 3d 769, 772 (¶12) (Miss. Ct. App. 2009).

¶9.     In *Miller v. State*, 733 So. 2d 846, 849-50 (¶13) (Miss. Ct. App.1998), this Court identified section 97-3-47 as our statutory version of common law involuntary manslaughter, which was "designed to criminally punish a defendant whose actions caused the death of another in certain circumstances, even though the defendant had no intention or design to effect a death." The crime was earlier defined in *Bailey v. State*, 176 Miss. 579, 169 So. 765, 767 (1936), as:

> The rule in this state as to the degree of negligence necessary to constitute manslaughter is accurately stated in the case of *Gregory v. State*, 152 Miss. 133, 118 So. 906, 909 [(1928)], wherein the court said: "Criminality cannot be predicated upon mere negligence or carelessness, but it has been said that it may be predicated upon **'that degree of negligence or carelessness which is denominated as gross and which constitutes such a departure from what would be the conduct of an ordinarily careful and prudent man under the same circumstances as to furnish evidence of indifference to**

---

Mississippi Code Annotated section 97-3-17(b) (Rev. 2020). Because Luter admitted that she intentionally fired the weapon, she would not have been entitled to such an instruction. *See Jones v. State*, 369 So. 3d 1006, 1011-12 (¶¶18-19) (Miss. Ct. App. 2023).

5

**consequences**."' This rule was approved by this court, in banc, in the case of *Shows v. State*, [175 Miss. 604,] 168 So. 862 [(1936)].

(Emphasis added).

¶10.    In the present case, the jury was properly instructed on the meaning of culpable negligence. Jury Instruction No. 6 provided:

> The Court instructs the jury that culpable negligence may be defined as the conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as the result of the willful creation of an unreasonable risk. Negligence is doing something that a reasonably careful person would not do under similar circumstances.

The facts in this case are not disputed. Although Luter contends that she had been told that the Flowers' mobile home was being repaired and that no one was supposed to be living in the back of the unit, Luter knew that the Flowers family was still living in the mobile home. Luter admitted that she aimed the gun at a dog on the steps of the inhabited dwelling. She fired two shots in that direction, and the bullets entered the trailer. Shooting those bullets caused the fatal injury to the child. It was for the jury to decide whether Luter's actions met the definition of culpable negligence. Considering the evidence in the light most favorable to the State, and giving the State the benefit of all favorable inferences that may be taken from the evidence, we find the evidence was legally sufficient for a rational juror to find that the State proved all the elements of culpable negligence manslaughter beyond a reasonable doubt.

## II.    Weight of the Evidence

¶11.    In her brief on appeal, Luter acknowledges that her trial counsel failed to file any post-trial motions and that therefore, "any issue regarding the weight of the evidence is arguably

6

waived because there was no motion for [a] new trial."

¶12.   Luter is represented by different counsel on appeal and contends that she received ineffective assistance of counsel because of her trial counsel's failure to file any post-trial motions on her behalf. Luter claims she was prejudiced by her trial counsel's failure to challenge the weight of the evidence after the trial, and as a result, we should review the weight of the evidence.

¶13.   Concerning appellate review of claims of ineffective assistance of counsel at trial, the Mississippi Supreme Court explained in *Cork v. State*, 329 So. 3d 1183, 1191-92 (¶31) (Miss. 2021):

> "[G]enerally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Dartez v. State*, 177 So. 3d 420, 422-23 (¶18) (Miss. 2015) (citing *Archer v. State*, 986 So. 2d 951 (Miss. 2008)). The Court addresses ineffective assistance of counsel claims on direct appeal . . . when "[1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. 2016) (alterations in original) (internal quotation marks omitted) (quoting *Read v. State*, 430 So. 2d 832, [841] (Miss. 1983)).

We also "resolve ineffective-assistance-of-counsel claims on direct appeal when the record affirmatively shows that the claims are without merit." *Welch v. State*, 361 So. 3d 1278, 1281 (¶13) (Miss. 2023) (quoting *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020)). We further explained in *Cork*, 329 So. 3d at 1192 (¶¶32-33):

> "[T]o prevail on an ineffective-assistance-of-counsel claim, a defendant must first prove that his counsel was deficient, which requires showing that 'counsel made errors so serious that he or she was not functioning as the counsel guaranteed the defendant by the Sixth Amendment.'" *Chamberlin v. State*, 55

So. 3d 1046, 1050 (¶4) (Miss. 2010) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Secondly, a defendant must prove that the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. (quoting *Strickland*, 466 U.S. at 687).

The Court "strongly presume[s] that counsel's conduct falls within the wide range of reasonable professional assistance, and the challenged act or omission might be considered sound trial strategy." *Id*. at (¶5) (internal quotation marks omitted) (quoting *Liddell v. State*, 7 So. 3d 217, 219 (¶6) (Miss. 2009)). Thus, "defense counsel is presumed competent," and "even where professional error is proven, this Court must determine if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id*.

After reviewing Luter's argument, we find that the relevant facts are apparent from the record and that the record shows that Luter's claims are without merit.

¶14.    In *Ford v. State*, 333 So. 3d 896, 915 (¶¶51-52) (Miss. Ct. App. 2022), we stated:

The Mississippi Supreme Court has held that an attorney's failure to file post-trial motions challenging the weight and sufficiency of the evidence is deficient, satisfying the first prong of *Strickland*. *See Parker v. State*, 30 So. 3d 1222, 1235 (¶48) (Miss. 2010) ("[T]he failure to file a motion for a new trial constituted a deficient performance under prong one of *Strickland*, since the trial judge did not have an opportunity to reconsider whether the verdict was contrary to the overwhelming weight of the evidence."); *Pace v. State*, 242 So. 3d 107, 118 (¶31) (Miss. 2018) (Pace's counsel was deficient in failing to file post-trial motions challenging the weight and sufficiency of the evidence presented at trial.); *Giles v. State*, 187 So. 3d 116, 125 (¶33) (Miss. 2016) ("Giles's trial counsel rendered deficient performance by failing to make any post-trial challenges to the weight or sufficiency of the evidence."); *Holland v. State*, 656 So. 2d 1192, 1197-98 (Miss. 1995) (finding counsel's performance to be deficient for failing to file motions challenging the weight and sufficiency of the evidence). The Mississippi Supreme Court and this Court have relied on *Pace*, *Parker*, *Giles*, and *Holland* to determine if counsel's failure to file post-trial motions was constitutionally ineffective.

As previously stated, Ford's counsel failed to make any post-trial motions for a new trial or JNOV. Counsel's failure to file those motions is deficient because the trial judge was not given the opportunity to "reconsider whether

the verdict was contrary to the overwhelming weight of the evidence" or the sufficiency of the evidence. *Parker*, 30 So. 3d at 1235 (¶48); *see also Pace*, 242 So. 3d at 118 (¶31); *Holland*, 656 So. 2d at 1197-98; *Giles*, 187 So. 3d at 125 (¶33). **Therefore the first prong of *Strickland* is satisfied. However, Ford must also show that his counsel's deficient performance was prejudicial to his defense. For counsel's deficient performance to be prejudicial, "counsel's errors [must be] so serious as to deprive the defendant of a fair trial."** *Strickland*, 466 U.S. at 687, 104. **In other words, there must be "a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different."** *Evans v. State*, 294 So. 3d 1152, 1158 (¶10) (Miss. 2020) (quoting *Ross v. State*, 954 So. 2d 968, 1003-04 (¶78) (Miss. 2007)).

(Emphasis added).

¶15. As in *Ford*, trial counsel's failure to make a post-trial motion on Luter's behalf renders trial counsel's performance deficient. But Luter must further show that the deficient performance was prejudicial; she must show a reasonable probability that the result of the trial would have been different if a motion for a new trial had been filed. Appellate counsel's sole argument in support of this assignment of error follows:

> The weight of evidence established that Luter was careless. However, the undisputed facts and thus the weight of evidence did not prove that she acted wantonly or with reckless disregard for the consequences of her actions as required for conviction.

¶16. Luter testified in her own defense. Luter admitted to shooting the gun twice toward the inhabited trailer. A child died as a result. There are no disputed facts on those points. The jury was properly instructed, weighed the evidence they heard, and found that Luter's actions amounted to culpable negligence manslaughter. Based upon our standard, we find that the jury's verdict was not "so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice."

## CONCLUSION

¶17.    We find that the evidence was legally sufficient to support a conviction of culpable negligence manslaughter. We also find that trial counsel was not constitutionally ineffective for failing to file a post-trial motion to challenge the weight of the evidence for the reasons set forth above. Therefore, we affirm Luter's conviction and sentence.

¶18.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, WEDDLE AND ST. PÉ, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**